RECEIVED
IN ALEXANDRIA, LA
JUN - 8 2009
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | |
|---|---|
| RANDALL K. ROMERO<br>Appellant | CIVIL ACTION<br>NO. 07-0234 |
| VERSUS | |
| MICHAEL J. ASTRUE<br>COMMISSIONER OF SOCIAL SECURITY<br>Appellee | JUDGE JAMES T. TRIMBLE, JR.<br>MAGISTRATE JUDGE JAMES D. KIRK |

## REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Randall K. Romero ("Romero") filed an application for a period of disability and disability insurance benefits on February 11, 2004 alleging a disability onset date of October 30, due to a work related lower back injury and accompanying leg, neck and lower back pain. (R. 109, 19). After his application was denied, Romero filed a Request for a Hearing before an Administrative Law Judge ("ALJ") on May 27, 2004 asserting that he suffered from both exertional and nonexertional impairments. (R. 84).

A hearing was held before ALJ Michael McShane in Lake Charles, Louisiana on September 8, 2006. However, the recording equipment used during the September 8, 2005 hearing malfunctioned and a transcript could not be produced. A de novo hearing was then held July 18, 2006 before ALJ McShane. Romero, his non-attorney representative, Anthony Mitchell, medical expert, Henry K. Hamilton, M.D., and vocational expert, Patricia Cowen attended the

hearing.

Because a medical expert in the area of mental impairments was not present at the July, 2006 hearing, a supplemental hearing was scheduled for September 14, 2006. According to the ALJ's decision, Romero, clinical psychologist, Daniel W. Hamill, medical expert, Patricia A. Cowen and vocational expert, Gwen Romano appeared and testified at this hearing.[1]

ALJ McShane issued an unfavorable decision on October 5, 2006 and Romero filed a request for review with the Appeals Council on October 18, 2006. (R.12). On December 8, 2006, the Appeals Council denied his request for review. Thus, the ALJ's decision became the final decision of the Commissioner of Social Security ("the Commissioner") (R. 3-11).

---

[1] A transcript of this supplemental hearing was not included in the administrative record filed with this Court. Accordingly, the undersigned ordered the Commissioner to file a copy of said transcript into the record. The Commissioner requested an extension within which to file the transcript, which was granted, and then advised the Court that he was unable to locate the hearing tape as the computer used at the hearing "crashed" and neither a transcript nor a tape of the September 14, 2006 hearing could be provided. Accordingly, the Commissioner suggested that another supplemental hearing be scheduled within forty-five (45) days. Per the Commissioner's request, United States District Judge James T. Trimble issued an order dated October 17, 2008 remanding the case under sentence six of 42 U.S.C. 405(g) for the Commissioner to conduct a supplemental hearing.
  Accordingly, on November 7, 2008, a supplemental hearing was held by ALJ Robert Ward. Romero and Mitchell appeared in Lake Charles via telephone and the ALJ, medical experts Robert Border, Ph.D., a clinical psychologist, and John Sanbuga, M.D. and Jeffrey Peterson appeared in Houston, Texas.

To qualify for Disability Insurance Benfits, a claimant must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. 1381(a). Eligibility is dependent upon disability, income and other financial resources. 42 U.S.C. 1382(a). To establish disability, a claimant must demonstrate a medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than twelve (12) months. Claimant must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy. 42 U.S.C. 1382(a)(3).

## SUMMARY OF PERTINENT FACTS

Romero is a fifty year old male who applied for a closed period of disability benefits due to a work related back injury which occurred on October 30, 2002. As a result of the work injury, Romero experienced persistent pain and was diagnosed with post traumatic lower back pain with radiculitis but without fractures or neurological deficits. (R. 138).

On June 6, 2004, Romero saw Jerry L. Whiteman, Ph.D., "for an assessment of his current psychological functioning in order to more fully understand his capacities and limitations." (R. 149-153). Dr. Whiteman administered the Wechsler Adult Intelligence Scale-III ("WAIS-III"), conducted and clinical interview and observed Romero's behavior. Romero's WAIS-III scores were: Full

Scale IQ of 66, Verbal IQ of 66 and Performance IQ of 72. Upon completing his evaluation, Dr. Whiteman opined that "an analysis of his scaled score profile reveals that he is either deficient or below average in most all categories" and Romero's cognitive abilities, as supported by his Full Scale IQ score of 66, reflected mild mental retardation.

On March 1, 2006, ALJ McShane referred Romero for another psychological evaluation. Naomi Friedberg administered the WAIS-III test and obtained results similar to those obtained by Dr. Whiteman. She advised that his Full Scale IQ was 69, his Verbal IQ was 69 and his Performance IQ was 78. Her opinion was that Romero mild mentally disabled to borderline intellectual functioning. (R. 155-161).

On October 5, 2006, ALJ McShane issued his findings. (R. 16-23). He determined that Romero met the insured status requirement through December 31, 2007; Romero did not engage in substantial gainful activity during the closed period of October 30, 2002 through June 1, 2005; and, Romero's severe impairments included a lower back injury and borderline intellectual functioning during this period of time. However, Romero did not suffer from an impairment or combination of impairments during this time which met or medically equaled one of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

The ALJ considered Listings 1.04A and 12.05C but found that

based upon Dr. Hamilton's testimony, Romero did not meet 1.04A and because Romero had adaptive functioning at a level greater than reflected in his IQ scores, he did not meet Listing 12.05C.

The ALJ also determined that considering Romero's age, education, work experience and residual functional capacity, he could make a successful adjustment to other work existing in significant numbers in the national economy. Therefore, claimant was not under a disability during the period of October 30, 2002 through June 1, 2005.

Because the transcript of the September 15, 2006 hearing was not part of the record, the undersigned remanded the matter pursuant to sentence six[2] for a hearing to supplement the record. The supplemental hearing was held November 7, 2008 before ALJ Robert Ward via telephone conference between Houston, Texas and Lake Charles, Louisiana. Present at the hearing were Romero, his representative, Anthony Mitchell, medical expert, Robert Border, Ph.D., medical expert, John Sanbugu, M.D., and vocational expert, Jeffrey Peterson.

---

[2] Though counsel for Romero contends the remand under sentence six was incorrect, it is noted that a remand under sentence four would have been inappropriate because sufficient evidence was not before this court to "enter upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner" as required by sentence four of 42 U.S.C. §405(g). As counsel for Romero initially argued, the record was incomplete as it lacked the transcript from the September 2006 hearing.

## Standard of Review

In considering Social Security appeals such as the one presently before the Court, the Court is limited by 42 U.S.C. §405(g) to a determination of whether substantial evidence exists in the record to support the Commissioner's decision and whether the decision comports with relevant legal standards. McQueen v. Apfel, 168 F.3d 152, 157 (5th Cir. 1999). For the evidence to be substantial, it must be relevant and sufficient for a reasonable mind to support a conclusion; it must be more than a scintilla but need not be a preponderance. Falco v. Shalala, 27 F.3d 160, 162 (5th Cir. 1994), citing Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 482 (1971). Finding substantial evidence does not involve a simple search of the record for isolated bits of evidence which support the Commissioner's decision but must include a scrutiny of the record as a whole.

A court reviewing the Commissioner's decision may not retry factual issues, re-weigh evidence, or substitute its judgment for that of the fact-finder. Fraga v. Bowen, 810 F.2d 1296, 1302 (5th Cir. 1987); Dellolio v. Heckler, 705 F.2d 123, 125 (5th Cir. 1983). The resolution of conflicting evidence and credibility choices are for the Commissioner and the ALJ, rather than the court. Allen v. Schweiker, 642 F.2d 799, 801 (5th Cir. 1981). Also, Anthony v. Sullivan, 954 F.2d 289, 295 (5th Cir. 1992). The court does have authority, however, to set aside factual findings which are not

supported by substantial evidence and to correct errors of law. Dellolio, 705 F.2d at 125. But, to make a finding that substantial evidence does not exist, a court must conclude there is a "conspicuous absence of credible choices" or "no contrary medical evidence." Johnson v. Bowen, 864 F.2d 340 (5th Cir. 1988); Dellolio, 705 F.2d at 125.

## Issues

Romero raises the following issues for judicial review on appeal:

1. The finding that claimant does not meet or equal Listing 12.05C is not supported by substantial evidence.

2. Romero was denied fundamental fairness and due process;

3. The ALJ failed to fully and fairly develop the record.

## Listing 12.05(C)

The ALJ's finding that Romero does not meet Listing 12.05(C) is not supported by substantial evidence. His reliance upon the medical expert who stated that Romero's school records were critical to determining whether he met the Listing must be vacated as the transcript of the testimony of that medical expert is not located in the record. Additionally, the undersigned does not find support in the record for the ALJ's statement that the record shows him to have adaptive functioning at a level greater than is reflected in his IQ scores. Though the statement is made, he gives no examples of Romero's adaptive functioning.

7

Romero argues that there is a presumption that mental retardation is a condition that does not change throughout life. Therefore, there is no need to present evidence of the manifestation of deficits in adaptive functioning before 22 where testing was not conducted prior to that time. Though this presumption has been adopted by various Circuit courts, there is no evidence that the presumption exists in the Fifth Circuit. See, Branham v. Heckler, 775 F.2d 1271, 1274 (4th Cir. 1985), Sird v. Chater, 105 F.3d 401, 402 & n.4 (8th Cir. 1997); Hodges v. Barnhart, 276 F.3d 1265, 1266 (11th Cir. 2001), Guzman v. Bowen, 801 F.2d 273, 275 (7th Cir. 1986). However, a review of the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision (2000) ("DSM-IV-TR"), indicates that the presumption is well founded.

> The essential feature of Mental Retardation is significantly subaverage general intellectual functioning (Criterion A) that is accompanied by significant limitations in adaptive functioning in at least two of the following skill areas: communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health and safety (Criterion B). The onset must occur before age 18 years (Criterion C).

(DSM-IV-TR, 41).[3]

---

[3] The term "deficits of adaptive functioning" is not defined in the Listings but Listing 12.00 does advise that four criteria are used for determining "severity". These four criteria are activities of daily living, social functioning, concentration, persistence and pace and episodes of decompensation and appear closely related to the aforementioned adaptive functioning behaviors.

It is important to note that "it is possible to diagnose Mental Retardation in individuals with IQs between 70 and 75 who exhibit significant deficits in adaptive behavior. *Conversely, Mental Retardation would not be diagnosed in an individual with an IQ lower than 70 if there are no significant deficits or impairments in adaptive functioning.*" (DSM-IV-TR, 41-42) (Emphasis added). Accordingly, it stands to reason that Romero's diagnosis of Mild Mental Retardation necessarily includes that he manifests deficits in adaptive behaviors. Additionally,

> As a group, people with this level of Mental Retardation typically develop social and communication skills during the preschool years (ages 0-5 years), have minimal impairment in sensorimotor areas, and often are not distinguishable from children without Mental Retardation until a later age. By their late teens, they can acquire academic skills up to approximately the sixth grade level. During their adult years, they usually achieve social and vocational skills adequate for minimum self support, but may need supervision, guidance, and assistance, especially when under unusual social or economic stress. With appropriate supports, individuals with Mild Mental Retardation can usually live successfully in the community, either independently or in supervised settings.

(DSM-IV-TR, 43, Section 317).

The above description fits Romero as he completed the seventh grade and while he only failed the first grade, he never really passed a grade but was simply promoted. Additionally, he has been able to hold down a job but he has marked limitations in understanding detailed instructions and carrying out those

instructions as well as regarding his ability to make judgments on simple work related decisions. Additionally, with respect to work related mental activities, he had marked limitations in interacting appropriately with the public, supervisors and co-workers, responding appropriately to work pressures in a usual work setting and responding to changes in routine work settings.

In light of the foregoing discussion, substantial evidence supports a finding that Romero exhibited deficits in adaptive functioning during the developmental period (that is, before the age of 22).

In addition to meeting the requirement of manifesting adaptive functioning during the developmental period, Romero must prove that he has "a valid verbal, performance or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.05C. Romero easily meets these requirements as his WAIS-III scores are well within the range of 60 through 70 and Dr. Border testified that when combining Romero's scores with the mental residual functional capacity provided by Dr. Whiteman (which Dr. Border advised should be considered), Romero would not be able to function in a work setting. (R.209). Accordingly, Romero meets the requirements of Listing 12.05C and is considered disabled for the period of October 30, 2002 through June 1, 2005.

Developing the Record and Due Process

Romero also argues that the record was not fully and fairly developed by the ALJ because hearing transcripts were missing, he delayed in securing the needed and promised consultative psychological examination and he refused to permit cross examination of the consultative psychologist. Additionally, he contends that the denial of the right to cross examine the consultative psychologist was a denial of fundamental fairness and due process. In light of the aforementioned finding there is no need to address these arguments.

## Conclusion

Based on the foregoing, IT IS RECOMMENDED that Romero's appeal be GRANTED; the final decision of the Commissioner be REVERSED AND VACATED; and, the case be REMANDED for a calculation of benefits.

## Objections

Under the provisions of 28 U.S.C. §636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond too another party's objections within **ten (10) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

11

A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING AN APPEAL ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 8th day of June, 2009.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE